ELMORE, Judge.
 

 *2
 
 Tammy Burger (Wife) appeals from the trial court's order entered 12 August 2015 on the issues of equitable distribution, child support, and alimony. We affirm in part and reverse and remand in part.
 

 I. Background
 

 Jeffery C. Burger (Husband) and Wife were married on 3 October 1987, separated on 30 December 2009, and divorced on 16 December 2011. They have two children, born in 1997 and 2001. On 30 September 2010, Wife filed a complaint for equitable distribution, alleging that she was entitled to an unequal distribution of the marital and divisible property in her favor and an equitable distribution of the marital and divisible debt. Husband filed an answer and counterclaims on 17 December 2010, seeking child custody, child support, post-separation support, alimony, equitable distribution, and attorney's fees. Husband alleged that he was a dependent spouse within the meaning of
 
 N.C. Gen. Stat. § 50-16
 
 .1A(2) and that Wife was a supporting spouse within the meaning of
 
 N.C. Gen. Stat. § 50-16
 
 .1A(5).
 

 Following a number of continuances, the Honorable Jena P. Culler held a bench trial from 11 February 2015 through 13 February 2015 on the issues of equitable distribution, child support, and alimony. In the trial court's 12 August 2015 Order, it found the following pertinent facts:
 

 48. The Court has considered the financial needs of the parties, the accustomed standard of living of the parties prior to their separation, the present employment income and other recurring earnings of each party from any source, the income earning abilities of the parties, the separate and marital debt service obligation of the parties, those expenses reasonably necessary to support each of the parties, and each parties' respective legal obligation to support any other person.
 

 *3
 
 ....
 

 51. The Court finds that Wife is employed by Wells Fargo, and has a gross monthly income of $15,098.00 and a net monthly income of $10,230.09.
 

 ....
 

 55. The Court finds that Husband is unemployed and has been unemployed for several years. Husband has no current monthly income. Husband has cancer of the eye and has to regularly apply pressure to his eye with his hand to relieve pain. While Husband is at a disadvantage for employment prospects due to his condition, the Court finds that he is capable of working and earning minimum wage and that he has a naive indifference to his self support. Therefore, the Court imputes a gross monthly income of $1,247.00, which is based on minimum hourly working forty (40) hours per week.
 

 ....
 

 61. The Court finds that Husband is a dependent spouse as that term is defined in N.C.G.S. § 50-16.1A(2), is actually and substantially dependent upon Wife for his maintenance and support, and is substantially in need of maintenance and support from Wife. Husband's resources are inadequate to meet his needs, and Husband is entitled to alimony.
 

 62. The Court finds that Wife is a supporting spouse as that term is defined in N.C.G.S. § 50-16.1A(5). Wife is an able-bodied person who has the means and ability to provide reasonable and adequate
 
 *686
 
 support to maintain Husband in the standard of living to which Husband was accustomed before the separation of the parties.
 

 ....
 

 64. The Court finds that the appropriate alimony award is $1,750.00 per month.
 

 65. The Court finds that Wife has been consistently employed with Wells Fargo (or its predecessor banks) during all times for which this court is entering an award of alimony and Wife has [the] ability to pay the alimony award set forth herein.
 

 *4
 
 66. [Husband] filed his claim for alimony in December 2010 and the Court finds it is appropriate to make this Order effective January 1, 2011.
 

 After concluding that an unequal distribution in favor of Husband would be equitable, the trial court distributed the marital property, marital debt, and divisible debt and ordered both parties to pay child support. Wife timely appeals.
 

 II. Analysis
 

 A. Income and Expenses
 

 On appeal, Wife argues that the trial court erred in determining Husband's income, Husband's expenses, and her income. Wife asserts that while the trial court properly imputed income to Husband for purposes of alimony and child support, Husband has an earning capacity greater than minimum wage and "the evidence at trial support[ed] at a minimum, an imputation of $5,000 gross income per month." Wife also claims that the trial court should have imputed income to Husband based on income he could receive from his mother's trust, arguing that Husband incorrectly thinks the trust is discretionary. Husband contends that the trial court properly imputed only minimum wage income due to his lack of recent work history and his medical condition.
 
 [1]
 

 N.C. Gen. Stat. § 50-16
 
 .3A(b) (2015) provides, "The court shall exercise its discretion in determining the amount, duration, and manner of payment of alimony. The duration of the award may be for a specified or for an indefinite term. In determining the amount, duration, and manner of payment of alimony, the court shall consider all relevant factors...."
 

 Wife first argues that the trial court should have imputed gross monthly income of $5,000 to Husband because he has an undergraduate, master's, and law degree, is capable of performing home repair, and in 2010, when Husband was still employed by Strategic Legal Solutions, he listed on a credit card application that his annual income was $60,000. Wife further argues that Husband voluntarily left his employment at Strategic Legal Solutions shortly after the parties separated.
 

 " 'Alimony is ordinarily determined by a party's actual income, from all sources, at the time of the order.' "
 
 Works v. Works
 
 ,
 
 217 N.C.App. 345
 
 , 347,
 
 719 S.E.2d 218
 
 , 219 (2011) (citations omitted) (quoting
 
 *5
 

 Kowalick v. Kowalick
 
 ,
 
 129 N.C.App. 781
 
 , 787,
 
 501 S.E.2d 671
 
 , 675 (1998) ). Similarly, in general, "a party's ability to pay child support is determined by that party's actual income at the time the award is made."
 
 McKyer v. McKyer
 
 ,
 
 179 N.C.App. 132
 
 , 146,
 
 632 S.E.2d 828
 
 , 836 (2006) (citing
 
 Atwell v. Atwell
 
 ,
 
 74 N.C.App. 231
 
 , 235,
 
 328 S.E.2d 47
 
 , 50 (1985) ). To base an alimony or child support obligation on earning capacity rather than actual income, the trial court must first find that the party has depressed her income in bad faith.
 
 Works
 
 ,
 
 217 N.C.App. at 347
 
 ,
 
 719 S.E.2d at
 
 219 ;
 
 McKyer
 
 ,
 
 179 N.C.App. at 146
 
 ,
 
 632 S.E.2d at 836
 
 . "[T]his showing may be met by a sufficient degree of indifference to the needs of a parent's children."
 
 McKyer
 
 ,
 
 179 N.C.App. at 146
 
 ,
 
 632 S.E.2d at 836
 
 .
 

 Here, the trial court found that Husband was unemployed at the time of the hearing and had been unemployed for several years. Noting that he would be at a disadvantage for employment prospects due to his health, the trial court nonetheless found that Husband is capable of working and earning minimum wage. The court further found that Husband has a naive indifference toward his self-support as well as toward his duty of support for his children, and it imputed gross
 
 *687
 
 monthly income of $1,247 based on working forty hours per week earning minimum wage.
 

 While the record evidence shows that Husband is well-educated, it also shows that he has no eyesight in one eye, "has cancer of the eye [,] and has to regularly apply pressure to his eye with his hand to relieve pain." The trial court found that Husband "would have a difficult time finding a job given his presentation of himself[.]" Wife's only attempt to present evidence on Husband's earning potential was based on a credit card application that he had completed, and a job he had maintained, five years prior. Moreover, regarding the trust, the trial court found that "there is no evidence that Husband received any income from the discretionary trust during the marriage or otherwise. While there is evidence that Husband could do more than just call and try to acquire money from the trust, there is no evidence that he received any benefit from the discretionary trust." The trial court stated that it "consider[ed] the fact that Husband did not take steps to further explore possibility of obtaining funds from the trust." Accordingly, the trial court did not abuse its discretion in imputing minimum wage income to Husband.
 

 Wife also argues that the trial court's calculation of Husband's expenses is unsupported by the evidence presented at trial, claiming that his expenses are speculative and hypothetical.
 

 "This Court has long recognized that '[t]he determination of what constitutes the reasonable needs and expenses of a party in an alimony
 
 *6
 
 action is within the discretion of the trial judge, and he is not required to accept at face value the assertion of living expenses offered by the litigants themselves.' "
 
 Nicks v. Nicks
 
 , --- N.C.App. ----, ----,
 
 774 S.E.2d 365
 
 , 376 (2015) (quoting
 
 Whedon v. Whedon
 
 ,
 
 58 N.C.App. 524
 
 , 529,
 
 294 S.E.2d 29
 
 , 32 (1982) ). "[T]he parties' needs and expenses for purposes of computing alimony should be measured in light of their accustomed standard of living during the marriage."
 
 Barrett v. Barrett
 
 ,
 
 140 N.C.App. 369
 
 , 372,
 
 536 S.E.2d 642
 
 , 645 (2000).
 

 Here, the trial court found that "Husband's monthly-shared family reasonable needs and expenses total $4,142.00 and Husband's monthly individual reasonable needs and expenses total $1,305.00. The specific findings as to these total expenses are attached hereto and incorporated herein by reference as Exhibit 5." Exhibit 5 details and confirms the total expenses listed above. Husband's financial affidavit filed 30 January 2015 supports the expenses contained in Exhibit 5 and the trial court's findings. While Wife argues that the expenses in the financial affidavit are "completely made up," Wife's "argument simply goes to the credibility and weight to be given to the affidavit. [Wife] was free to attack [Husband's] affidavit at trial by cross-examination.... Such determinations of credibility are for the trial court, not this Court."
 
 Parsons v. Parsons
 
 ,
 
 231 N.C.App. 397
 
 , 400,
 
 752 S.E.2d 530
 
 , 533 (2013) (citation omitted). The trial court acted within its discretion in calculating Husband's total reasonable needs and expenses based on the record evidence.
 

 Additionally, Wife argues that the trial court's calculation of her income is unsupported by the evidence. Wife claims that the trial court erred in adding her bonus from 2014 to the gross monthly income amount that she submitted to the trial court in her financial affidavit, which raised her gross monthly income from $11,566.08 to $15,098.00. Wife relies on
 
 Williamson v. Williamson
 
 ,
 
 217 N.C.App. 388
 
 , 391,
 
 719 S.E.2d 625
 
 , 627 (2011), in which this Court held that the trial court improperly included the defendant's tax refund as part of her regular income.
 

 "A supporting spouse's ability to pay an alimony award is generally determined by the supporting spouse's income at the time of the award."
 
 Rhew v. Felton
 
 ,
 
 178 N.C.App. 475
 
 , 484-85,
 
 631 S.E.2d 859
 
 , 866 (2006) (citation omitted). "[I]t is within the trial court's discretion to determine the weight and credibility that should be given to all evidence that is presented during the trial."
 
 Phelps v. Phelps
 
 ,
 
 337 N.C. 344
 
 , 357,
 
 446 S.E.2d 17
 
 , 25 (1994).
 

 *688
 
 Wife testified that she received a bonus in 2011, 2012, 2013, and 2014. In Wife's November 2011 financial affidavit, she listed her gross monthly
 
 *7
 
 income as $15,618.55, which included $3,524.33 under "Bonuses." Wife also filed financial affidavits in April 2012 and July 2012, in which she listed on both that her gross monthly income was $15,218.50, which included $3,844.67 under "Bonuses."
 

 Wife filed a revised financial affidavit in January 2015, just prior to trial, in which she listed that her gross monthly income was $11,566.08 and she left the "Bonuses" section blank. Wife attached her last two pay stubs to the financial affidavit, which covered the 14 December 2014 to 10 January 2015 pay periods. When asked why she did not include her bonus in her gross monthly income, Wife testified, "I don't know until I get my bonus what it will be this year."
 

 The evidence established that Wife had consistently received bonuses for the past four years. Wife based her most recent financial affidavit in part on her gross monthly income from December 2014. Wife admitted that her 2014 bonus totaled around $41,000. And in November 2014, when completing a loan application for a new home, Wife listed her total gross monthly income as $15,097, which included $3,478 under "Bonuses."
 

 Unlike in
 
 Williamson
 
 where there was no evidence that the tax refund constituted regular income, 217 N.C.App. at 390-91, 719 S.E.2d at 627, here, the trial court properly determined Wife's income in accordance with the record evidence. Based on the facts presented in this case, the trial court acted within its discretion in including Wife's December 2014 bonus in her average gross monthly income.
 

 As a related issue, Wife makes a blanket assertion that the trial court's findings of fact concerning the parties' income and expenses are unsupported by the evidence and, absent proper findings, the trial court's conclusions of law relating to the support obligations must also fail.
 

 "The review of the trial court's findings are limited to 'whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law.' "
 
 Dodson v. Dodson
 
 ,
 
 190 N.C.App. 412
 
 , 415,
 
 660 S.E.2d 93
 
 , 96 (2008) (quotation omitted). For the numerous reasons stated above, the trial court's findings regarding the parties' income and expenses were supported by competent evidence. Likewise, the trial court's conclusions of law, based on those findings, were proper.
 

 B. Effective Date of Alimony Award
 

 Wife next argues that the trial court erred in awarding Husband alimony effective 1 January 2011, claiming that she should not have an alimony obligation for the period of 1 January 2011 through 1 February 2015.
 

 *8
 
 "Our Court reviews a trial court's decision regarding the manner of payment of an alimony award for abuse of discretion."
 
 Rhew
 
 ,
 
 178 N.C.App. at 479-80
 
 ,
 
 631 S.E.2d at
 
 863 (citing
 
 Whitesell v. Whitesell
 
 ,
 
 59 N.C.App. 552
 
 , 553,
 
 297 S.E.2d 172
 
 , 173 (1982) ).
 

 In
 
 Smallwood v. Smallwood
 
 , --- N.C.App. ----, ----,
 
 742 S.E.2d 814
 
 , 824 (2013), the defendant, relying on our holding in
 
 Brannock v. Brannock
 
 ,
 
 135 N.C.App. 635
 
 ,
 
 523 S.E.2d 110
 
 (1999), argued that
 
 N.C. Gen. Stat. § 50-16
 
 .3A did not permit the trial court to award alimony "retroactively." This Court rejected the defendant's argument, stating that "while
 
 Brannock
 
 does discuss the changes in North Carolina law regarding alimony, nothing in the opinion references any intent by the General Assembly to eliminate retroactive alimony or to abrogate our rulings in
 
 Austin
 

 [2]
 
 and its progeny."
 
 Smallwood
 
 , --- N.C.App. at ----,
 
 742 S.E.2d at 824
 
 . Accordingly, we upheld the award.
 

 Id.
 

 at ----,
 
 742 S.E.2d at 824
 
 .
 

 Here, the trial court awarded Husband alimony in the amount of $1,750.00 per month for ten years, effective 1 January 2011. Wife does not challenge the ten-year duration of the payments but only argues that the trial court erred in making the award retroactive to 1 January 2011. Wife's argument, however, has already been rejected by this Court.
 
 See
 

 id.
 

 at ----,
 
 742 S.E.2d at 824
 
 . Accordingly,
 
 *689
 
 Wife cannot establish that the trial court abused its discretion in making the alimony award effective 1 January 2011.
 

 Wife also argues that the trial court erred because it failed to make findings about the parties' income and expenses for the intervening years between 2011 and 2015. Alimony, however, "is ordinarily determined by a party's actual income, from all sources, at the time of the order."
 
 Kowalick
 
 ,
 
 129 N.C.App. at 787
 
 ,
 
 501 S.E.2d at 675
 
 . In the trial court's findings of fact, it found that Wife's current net monthly income was $10,230.90 and her total monthly reasonable financial needs and expenses were $8,240. Based on the evidence presented and consideration of the statutory factors, the trial court awarded Husband $1,750 per month in alimony. The trial court did not abuse its discretion in considering Wife's current net monthly income in determining the alimony award.
 

 C. Equitable Distribution
 

 Finally, Wife argues that the trial court erred in distributing Wife's Wachovia/Wells Fargo Savings Plan (the Plan) because the trial court
 
 *9
 
 failed to value the divisible component of the Plan as of the date of distribution. Wife does not otherwise contest the trial court's distribution.
 

 Our standard of review for alleged errors in a trial court's classification and valuation of divisible and marital property is well-settled:
 

 [w]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable
 
 de novo
 
 . We review the trial court's distribution of property for an abuse of discretion.
 

 Nicks
 
 , --- N.C.App. at ----,
 
 774 S.E.2d at 380
 
 (quoting
 
 Romulus v. Romulus
 
 ,
 
 215 N.C.App. 495
 
 , 498,
 
 715 S.E.2d 308
 
 , 311 (2011) ).
 

 In making an equitable distribution of the marital assets, the trial court is required to undertake a three-step process: "(1) to determine which property is marital property, (2) to calculate the net value of the property, fair market value less encumbrances, and (3) to distribute the property in an equitable manner."
 
 Beightol v. Beightol
 
 ,
 
 90 N.C.App. 58
 
 , 63,
 
 367 S.E.2d 347
 
 , 350 (1988) (citation omitted). Under our General Statutes, marital property is defined as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned...."
 
 N.C. Gen. Stat. § 50-20
 
 (b)(1) (2015). Divisible property includes "[p]assive income from marital property received after the date of separation, including, but not limited to, interest and dividends."
 
 N.C. Gen. Stat. § 50-20
 
 (b)(4) (2015). "For purposes of equitable distribution, marital property shall be valued as of the date of the separation of the parties, and ... [d]ivisible property and divisible debt shall be valued as of the date of distribution."
 
 N.C. Gen. Stat. § 50-21
 
 (b) (2015).
 

 Here, the trial court found that the " 'Wachovia/Wells Fargo 401(k)' listed on the Final Pretrial Order is a duplicate entry of the 'Wachovia/Wells Fargo Savings Plan.' " The trial court did not issue any other findings regarding the Plan but listed it as marital property and ordered the following:
 

 Wife's Wachovia/Wells Fargo Savings Plan shall be divided equally between the parties as of the date of separation.
 

 *10
 
 Each party is hereby awarded fifty percent (50%) of the balance of the said account as of the date of separation, which was $498,672.00, together with all passive gains and losses accruing on his or her respective share from the date of separation through the date of the division of the said account....
 

 On the Equitable Distribution Pretrial Order, both parties contended that the Plan was marital property and the date of separation value was $498,672.13. Neither party submitted a current value. Similarly, at trial, no testimony concerned the current value of the Plan. Because no evidence was presented
 
 *690
 
 on the Plan's current value and no evidence was presented on any passive changes in the Plan's value, the trial court erred in distributing the passive gains and losses without additional findings of fact.
 
 See
 

 Cunningham v. Cunningham
 
 ,
 
 171 N.C.App. 550
 
 , 556,
 
 615 S.E.2d 675
 
 , 680 (2005) ("[W]hen no finding is made regarding the value of an item of distributable property, a trial court's findings are insufficient even if a determination is made with respect to the percentage of a distributable property's value to which each party is entitled."). Accordingly, we reverse that portion of the order on equitable distribution and we remand to the trial court for entry of additional findings.
 

 III. Conclusion
 

 The trial court did not err in its award of alimony, and the trial court's findings of fact support its conclusions of law. The trial court did err in distributing the passive gains and losses from the Plan. We reverse this portion of the equitable distribution award and remand to the trial court.
 

 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 

 Judges DAVIS and DIETZ concur.
 

 [1]
 

 Although Husband initially argues that the trial court erred in finding he was unemployed due to bad faith, Husband did not file a notice of appeal in this case. N.C. R. App. P. 3 (2016).
 

 [2]
 

 Austin v. Austin
 
 ,
 
 12 N.C.App. 390
 
 , 393,
 
 183 S.E.2d 428
 
 , 430 (1971).